IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ZACHARY T. HARRIS, SR.,

             Petitioner,

        vs.

MATTHEW CATE,[1] Secretary, California
Department of Corrections and
Rehabilitation,

             Respondent.

No. 2:11-cv-00301-JKS

MEMORANDUM DECISION

Zachary T. Harris, Sr., a state prisoner proceeding *pro se*, filed a Petition for a Writ of

Habeas Corpus under 28 U.S.C. § 2254.  Harris is currently in the custody of the California

Department of Corrections and Rehabilitation, in parole status.  Respondent has answered, and

Harris has replied.

## I.  BACKGROUND/PRIOR PROCEEDINGS

In October 2008 Harris entered a negotiated plea of guilty to possession of

methamphetamine (Cal. Penal Code § 11377(a)).  The San Joaquin County Superior Court

sentenced Harris to two years in prison, suspended imposition of sentence, and placed Harris on

felony drug court probation.  In January 2009 Harris gave a false name to an officer at a traffic

stop.  A search of Harris discovered a fake California driver's license and two counterfeit $100

bills.  In June 2009 Harris was found in violation of the terms of his probation, and the trial court

---

[1] Matthew Cate, Secretary, California Department of Corrections and Rehabilitation,
substituted for Vince Cullen, Warden, San Quentin State Prison.  Fed. R. Civ. P. 25(d).

lifted the stay and imposed a sentence of two years minus his earned credits.  The California Court of Appeal, Third Appellate District, affirmed the revocation and imposition of the suspended sentence, but corrected the credits to which Harris was entitled, in an unpublished decision.[2]  Harris did not seek further review in the California Supreme Court.

While his appeal was pending, Harris filed a habeas corpus petition in the California Court of Appeal, Third Appellate District.  The Court of Appeal denied the Petition in an unreported order, noting  that the remedy by appeal is adequate.  Harris then filed a habeas petition in the California Supreme Court, which denied relief in an unreported decision on November 10, 2009, citing *In re Dixon* (1953) 41 Cal.2d 756 [264 P.2d 513]; *In re Swain* (1949) 34 Cal.2d 300, 304 [209 P.3d 793, 796 ]; *People v. Duvall* (1995) 9 Cal.4th 464, 474 [886 P.2d 1252, 1258].  Harris timely filed his Petition for relief in this Court on January 29, 2011.

## II.  GROUNDS RAISED/DEFENSES

In his Petition, Harris raises three grounds:  (1) ineffective assistance of counsel (trial and appellate); (2) the trial court abused its discretion in denying his motion to withdraw his plea; and (3) the trial court improperly denied him a hearing before revoking his probation.  Respondent asserts that Harris's claims are procedurally barred.  Respondent raises no other affirmative defense.[3]

## III.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or

---

[2] *People v. Harris*, No. C062330, 2010 WL 5005623 (Cal. Ct. App. Dec. 9, 2010).

[3] Rules Governing Section 2254 Cases in the U.S. Dist. Courts, Rule 5(b) (2011).

involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States" at the time the state court renders its decision or "was based

on an unreasonable determination of the facts in light of the evidence presented in the State court

proceeding."[4]   The Supreme Court has explained that "clearly established Federal law" in

§ 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the

time of the relevant state-court decision."[5]   The holding must also be intended to be binding upon

the states; that is, the decision must be based upon constitutional grounds, not on the supervisory

power of the Supreme Court over federal courts.[6]   Thus, where holdings of the Supreme Court

regarding the issue presented on habeas review are lacking, "it cannot be said that the state court

'unreasonabl[y] appli[ed] clearly established Federal law.'"[7]   When a claim falls under the

"unreasonable application" prong, a state court's application of Supreme Court precedent must

be "objectively unreasonable," not just "incorrect or erroneous."[8]   The Supreme Court has made

clear that the objectively unreasonable standard is "a substantially higher threshold" than simply

---

[4] 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 402-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

[5] *Williams*, 529 U.S. at 412 (alteration added).

[6] *Early v. Packer*, 537 U.S. 3, 10 (2002).

[7] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations in original) (citation omitted); *see also Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (per curiam); *Kessee v. Mendoza-Powers*, 574 F.3d 675, 678-79 (9th Cir. 2009); *Moses v. Payne*, 555 F.3d 742, 753-54 (9th Cir. 2009) (explaining the difference between principles enunciated by the Supreme Court that are directly applicable to the case and principles that must be modified in order to be applied to the case; the former are clearly established precedent for purposes of § 2254(d)(1), the latter are not).

[8] *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotation marks and citations omitted).

believing that the state-court determination was incorrect.[9]  "[A]bsent a specific constitutional violation, federal habeas corpus review of trial error is limited to whether the error 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"[10]  In a federal habeas proceeding, the standard under which this Court must assess the prejudicial impact of constitutional error in a state court criminal trial is whether the error had a substantial and injurious effect or influence in determining the outcome.[11]  Because state court judgments of conviction and sentence carry a presumption of finality and legality, the petitioner has the burden of showing by a preponderance of the evidence that he or she merits habeas relief.[12]

The Supreme Court recently underscored the magnitude of the deference required:

As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings.  *Cf. Felker v. Turpin,* 518 U.S. 651, 664, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244).  *It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents.  It goes no farther.* Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal.  *Jackson v. Virginia,* 443 U.S. 307, 332, n.5, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment).  As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in

---

[9] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams,* 529 U.S. at 410).

[10] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642, 643 (1974)).

[11] *Fry v. Pliler,* 551 U.S. 112, 121 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).

[12] *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002) (citations omitted); *see Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (per curiam) (stating that a federal court cannot grant "habeas relief on the basis of little more than speculation with slight support").

justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.[13]

## IV. DISCUSSION

### A. Procedural Bar

Harris did not raise any of the claims he presents to this Court in his direct appeal. Instead, Harris presented all three claims in his habeas petitions to the California Court of Appeal and the California Supreme Court. Respondent argues that Harris's claims are procedurally barred because the California Supreme Court denied his habeas petition citing *Dixon*. This Court disagrees. The Ninth Circuit, by which this Court is bound, has held that, because of the "fundamental constitutional error" exception to the application of *Dixon*,[14] *Dixon* does not constitute an adequate and independent state ground precluding federal habeas review.[15]

### B. Merits

Neither the California Court of Appeal nor the California Supreme Court reached the claim on the merits. A state court is not required to give reasons before its decision can be deemed to be "adjudicated on the merits."[16] When there is no reasoned state court decision denying an issue presented to the state court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the

---

[13] *Harrington v. Richter*, 131 S. Ct. 770, 786-87 (2011) (emphasis added).

[14] *See In re Robbins*, 959 P.2d 311, 340 n.34 (1998) (noting that the four exceptions in *In re Harris*, 855 P.2d 391, 398-407 (1993) apply to *Dixon*). One of the four exceptions is the "fundamental constitutional error" exception. *Harris*, 855 P.2d at 398-403.

[15] *Park v. California*, 202 F.3d 1146, 1151-53 (9th Cir. 2000).

[16] *Richter*, 131 S. Ct. at 785.

contrary."[17]  "The presumption may be overcome when there is reason to think that some other

explanation for the state court's decision is more likely."[18]  In this case, however, it is clear that

the California Supreme Court declined to address Harris's claims entirely upon procedural

grounds; therefore the presumption does not apply.  Consequently, this Court must review the

issues de novo.[19]

> Ground 1:  Ineffective Counsel

Harris contends that in connection with his probation revocation proceeding, his trial

counsel, Allan Jose, failed to file and argue numerous unspecified motions that counsel allegedly

agreed had merit and were necessary to protect Harris's due process rights.  Harris further alleges

that because counsel failed to raise the issues he raised in his *pro se* petitions for habeas relief in

the California Court of Appeal and California Supreme Court, his appellate counsel was also

ineffective.

Under *Strickland*, to demonstrate ineffective assistance of counsel, Harris must show both

that his counsel's performance was deficient and that the deficient performance prejudiced his

defense.[20]  A deficient performance is one in which "counsel made errors so serious that counsel

was not functioning as the 'counsel' guaranteed by the Sixth Amendment."[21]  Harris must show

that defense counsel's representation was not within the range of competence demanded of

attorneys in criminal cases, and that there is a reasonable probability that, but for counsel's

---

[17] *Id*. at 784-85.

[18] *Id.* at 785.

[19] *Williams v. Cavazos*, 646 F.3d 626, 636-37 (9th Cir. 2011).

[20] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

[21] *Id*.

6

ineffectiveness, the result would have been different.[22]  An analysis that focuses "solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective."[23]  An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either one of the *Strickland* prongs.[24]

While judicial inquiry into counsel's performance under *Strickland* must be highly deferential, it is "by no means insurmountable," but nonetheless remains "highly demanding."[25] "*Strickland* does not guarantee perfect representation, only a reasonably competent attorney."[26] "Only those habeas petitioners who can prove under *Strickland* that they have been denied a fair trial by the gross incompetence of their attorneys will be granted the writ and will be entitled to retrial."[27]

---

[22] *Hill v. Lockhart,* 474 U.S. 52, 57 (1985).

[23] *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993); *see Strickland*, 466 U.S. at 687; *see also Kimmelman v. Morrison*, 477 U.S. 365, 374 (1986) ("The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." (citing *Strickland*, 466 U.S. at 687)); *United States v. Cronic*, 466 U.S. 648, 656 (1984) ("The right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial.  Absent some effect of challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated." (citations omitted)).

[24] *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

[25] *Morrison*, 477 U.S. at 382.

[26] *Richter*, 131 S.Ct. at 791 (internal quotation marks and citation omitted).

[27] *Morrison*, 477 U.S. at 382.

"A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."[28]  The court must then consider those acts or omissions against "prevailing professional norms."[29]  Even then, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."[30]

Parsing the Petition, the Court can identify but a single motion that Harris contends trial counsel failed to file:  a motion to withdraw the October 2008 guilty plea.  The record, however, reflects that on April 2, 2009, Harris filed a *Marsden-Faretta* motion to relieve counsel and to represent himself.[31]  At the hearing on the *Marsden-Faretta* motion, counsel indicated that Harris had requested counsel file a motion to withdraw his earlier plea, but that it had not been filed because Harris had not yet signed and returned the declaration to accompany the motion.  Harris completed the waiver of right-to-representation form, the trial court granted the *Marsden-Faretta*

---

[28] *Strickland*, 466 U.S. at 697.

[29] *Id.*

[30] *Id.*

[31] The term "*Marsden* motion" comes from *People v. Marsden,* 465 P.2d 44, 47-48 (Cal. 1970), holding that, as part of a criminal defendant's right to effective assistance of counsel under the Sixth Amendment, a trial judge must permit a defendant requesting substitute counsel the opportunity to present his reasons for the request, i.e., evidence and argument to establish that he is receiving ineffective assistance of counsel.  The term "*Faretta* motion" comes from *Faretta v. California*, 422 U.S. 806, 819-820 (1975), holding that the Sixth Amendment grants a criminal defendant the right of self-representation.

motion and granted Harris thirty days within which to file his motion to withdraw his plea.[32]

Harris, appearing *pro se*, filed a motion to withdraw his plea, which was heard and denied.[33]

      The only act of counsel that was specifically identified was the motion to withdraw the plea.  The record in this case reflects that at the time counsel was relieved, the reason for the failure to file the motion was because Harris himself had not yet signed and returned a necessary document. Counsel can hardly be faulted for failing to perform an act that the actions of the defendant himself prevented from being performed prior to counsel's being relieved as counsel in accordance with Harris's own request.  The record also reflects that Harris himself filed the motion, thereby eliminating the prejudice prong.

      The failure of appellate counsel to raise meritless or weak issues does not constitute ineffective assistance of counsel.[34]  For the reasons stated above in connection with this ground, and those stated below with respect to the second and third grounds, the grounds raised by Harris are without substantial merit.  Accordingly, appellate counsel was not ineffective for failing to raise them.

      Based upon the record before it, Harris has failed to establish that either his trial or appellate counsel committed any error that was so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment or that his defense was prejudiced, as required by *Strickland-Hill*.

---

[32] Lodged Doc. No. 10, Transcript, April 2, 2009, at 94, 96.

[33] Lodged Doc. No. 10, Transcript, June 18, 2009.

[34] *See Jones v. Barnes*, 463 U.S. 745, 751-52 (1983) (holding that appellate counsel does not have an obligation to raise every nonfrivolous argument); *Miller v. Keeney*, 882 F.2d 1428, 1428 (9th Cir. 1989) (holding that appellate counsel's failure to raise a weak issue did not constitute ineffective counsel).

<u>Ground 2:  Withdrawal of Plea</u>

Prior to the revocation of probation, Harris appearing *pro se*, timely filed a motion to withdraw his June 2008 guilty plea.  Harris argues that the trial court denied him a hearing on his motion to withdraw his plea and abused its discretion in denying his motion.

The record directly refutes Harris's claim that he was denied a hearing.  Indeed, the San Joaquin Superior Court held a preliminary hearing on May 15, 2009, at which time Harris was permitted to submit to the court all documentation he intended to submit in support of his motion.  On June 18, 2009, at the hearing on the motion, at the court's request, Harris offered the following explanation as to why he wanted to withdraw his plea.

> THE DEFENDANT.  Okay. At the time of the plea, I was in this court and my attorney, Mr. Williams, you, and I, we all had agreed to that if I was to accept the plea of, I believe, two years suspended, that I would be afforded to go to New Directions, a New Directions program, which is a [*sic*] in-home program.  I believe we discussed that prior to October 27th.
>
> And then on the 27th when we came t court, I had explained to my attorney that that's what I would do if I was to be afforded Prop. 36 and go to New Directions.
>
> After the 27th, it was put off.  I believe my attorney was supposed to call my parole officer, Mr. Longmire, and ask in regards to the difference between Prop. 36 and the alleged drug court.  I didn't know nothing about the drug court.  And I kept asking my attorney, "What's the difference between drug court and Prop. 36?"
>
> And he continuously said he didn't know, and that he would try to find out. I said, you know, I'm not -- I didn't feel comfortable taking a plea to something I didn't know nothing about.
>
> And so on the 31st , you were absent, and I believe it was Judge Demetras was here.  And I asked my attorney then, I said, "Well what's the difference between drug court and Prop 36?"  He still hadn't found out, and so he couldn't relay the information to me.
>
> And the judge -- wait.  Give me a second.  Let me see if I can find it here.
>
> On the 31st, Judge Demetras said that I would -- I would be afforded to go to drug court, but I didn't know nothing about drug court.  And I felt as though in order to get out, I accepted the drug court deal, which was contrary to what was trying to do.  I was trying to go back to New Directions, which I had just recently graduated from.

And so when I did accept the two-year deal and went to prison instead getting right out, I had a problem when I got out and didn't go straight to the drug court, nor did I go to the probation office.

And so, basically, my main thing was to be provided an opportunity to have at least two or three chances on probation. It's been quite some time since I was on probation. And felt as though it is pretty harsh to accept a two-year deal suspended for such a small amount of what, I believe, was meth found in my car. I believe it was one little bag, less than a quarter of a gram that was allegedly found in my car on the night in question. And for two years in prison for that, I thought, was pretty harsh.

So with that I believe it was an excessive sentence. And I really didn't know the full consequences of the plea, because my attorney never really -- he never provided me with all the information I was trying to find out.[35]

Following that colloquy, the San Joaquin County Superior Court held:

THE COURT:  I'm looking at the minute order that's dated October 31st, 2008, and the minute order is signed by you, Mr. Harris. And it indicates that a sentence of two years state prison is being stayed, that you're placed on five years formal probation.

You're required to attend and complete felony drug court. The Court recommended New Directions for that program. That two years was stayed under a number of terms and conditions, including, according to the minute order, obey all laws, do not commit a same or similar offense, and that you successfully attend and complete drug court.

I've also had an opportunity to review the change of plea transcript that was before Judge Demetras on October 31st, 2008. And as the District Attorney's Office correctly points out on page 3, it indicates if you fail out of drug court, your sentence would be two years. That was discussed with you by Judge Demetras.

At the preliminary hearing on your new case, which was file SF110738A, there, in addition to having the new charges, your violation of probation on this current case we're discussing, S109806A, on that particular drug case, that your formal violation of probation grant is concurrent with the preliminary hearing, at the same time.

I heard the preliminary hearing myself. At the conclusion of that preliminary hearing, your attorney, Mr. Jose, requested that I actually delay ruling on the violation of probation, because he thought there may be a motion to withdraw the plea.

The court at this time is prepared to rule on that violation of probation. And my ruling is the fact that you did violate your probation, because you failed to obey all laws, and you picked up a new criminal offense.

---

[35] Lodged Doc. 10, June 18, 2009, Transcript, at 115-17.

> As result of that, under the terms and conditions of your plea, which was entered back on October 31st, 2008, you did violate.  Your agreement was, as a term and condition of probation, you were to obey all laws.  If you did not obey all laws, you would serve a two-year sentence.[36]

The San Joaquin Superior Court then denied the motion to withdraw the plea, found that Harris had violated the terms of his probation, and imposed the suspended sentence.[37]

The record does not reflect that Harris requested any further evidentiary hearing before the San Joaquin Superior Court or either California appellate court; nor does Harris request an evidentiary hearing in this proceeding.

The Supreme Court directly addressed the subject of the withdrawal of a guilty plea, stating:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process.  When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.  He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann*.[38]

"Where, as here, a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'"[39]  "In order to prevail on prejudice before the state court Harris had to demonstrate 'a reasonable probability

---

[36] Lodged Doc. 10, June 18, 2009, Transcript, at 117-18.

[37] Lodged Doc. 10, June 18, 2009, Transcript, at 118-20.

[38] *Tollett v. Henderson*, 411 U.S. 258, 267 (1973).

[39] *Hill v. Lockhart*, 474 U.S. 52, 56-57 (1985) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)).

that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'"[40]

Harris, however, faces a high hurdle in seeking to overturn a guilty plea on collateral review.  As the Supreme Court held in *Mabry*:

> It is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked.  It is also well settled that plea agreements are consistent with the requirements of voluntariness and intelligence because each side may obtain advantages when a guilty plea is exchanged for sentencing concessions, the agreement is no less voluntary than any other bargained-for exchange.  It is only when the consensual character of the plea is called into question that the validity of a guilty plea may be impaired.  *In Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970), we stated the applicable standard:
>
> [A] plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes).[41]

Twenty years later the Supreme Court explained:

> [The Supreme Court] recently explained, in reversing a lower court determination that a guilty plea was not voluntary:  "[T]he law ordinarily considers a waiver knowing, intelligent, and sufficiently aware if the defendant fully understands the nature of the right and how it would likely apply *in general* in the circumstances—even though the defendant may not know the *specific detailed* consequences of invoking it." *United States v. Ruiz*, 536 U.S. 622, 629, 122 S.Ct. 2450, 153 L.Ed.2d 586 (2002) (emphasis in original).  We similarly observed in *Patterson:* "If [the defendant] . . . lacked a full and complete appreciation of all of the consequences flowing from his waiver, it does not defeat the State's showing that the

---

[40] *Premo v. Moore*, 131 S. Ct. 733, 743 (2011) (quoting *Hill*, 474 U.S. at 59).

[41] *Mabry v. Johnson*, 467 U.S. 504, 508-09 (1984) (internal quotation marks and citations omitted), *disapproved on other grounds in Puckett v. United States*, 556 U.S. 129, 138 n.1 (2009).

information it provided to him satisfied the constitutional minimum." 487 U.S., at 294, 108 S.Ct. 2389 (internal quotation marks omitted).[42]

Although the Ninth Circuit has suggested that an abuse of discretion may also amount to a constitutional violation,[43] the Supreme Court has never held that abuse of discretion is an appropriate basis for granting federal habeas relief.  Indeed, quite to the contrary, the Supreme Court has suggested that, while abuse of discretion is an appropriate standard on direct review, in a federal habeas proceeding it is not.[44]

Reduced to its essence, Harris's argument is that his attorney failed to explain the difference between Proposition 36[45] and referral to the drug court; thus, he received ineffective assistance of counsel.  Consequently, he pleaded guilty without understanding the consequences of that plea.  This Court disagrees.

First, as the Supreme Court made clear in *Mabry* and *Tovar*, whether or not the defendant understands all of the details of the plea bargain is irrelevant.  Second, by his own admission at the hearing on his motion to withdraw his plea, Harris stated "that in order to get out, I accepted the plea deal."  Third, the trial court made clear it was recommending referral to the New Directions program that Harris desired.  By his own actions, i.e., failure to follow the terms of his sentence, Harris prevented the drug court from determining whether or not he qualified for and

---

[42] *Iowa v. Tovar*, 541 U.S. 77, 92 (2004) (emphasis in the original).

[43] *See Schell v. Witek*, 218 F.3d 1017, 1025 (9th Cir. 2000) (en banc).

[44] *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010) ("It is not even whether it was an abuse of discretion for her to have done so—the applicable standard on direct review. The question under AEDPA is instead whether the determination of the Michigan Supreme Court that there was no abuse of discretion was "an unreasonable application of . . . clearly established Federal law." (citing  § 2254(d)(1)).

[45] Cal. Penal Code § 1210.1

14

would be referred to the New Directions program under Proposition 36.  Harris's argument is totally devoid of merit.  Harris is not entitled to relief under his second ground.

Ground 3:  Probation Revocation Hearing

Harris was charged with two probation violations:  (1) that Harris failed to obey all laws (arising out of the January 2009 traffic stop); and (2) that he failed to follow directions by not reporting to the probation officer.  Harris contends that the trial court improperly declined to continue his probation revocation proceeding, found him guilty of violating his probation, and sentenced him without a hearing.  Specifically, Harris alleges:

> On 6/18/09, where as it was well known throughout the court proceedings that Case SF-109806 was a coerced & manipulated plea that Atty Jose stated that he would file a motion to withdraw plea, yet failed; when petitioner in pro per motioned to change plea & for continue [*sic*] Judge Stephenson, violated the constitutional rights by sentencing, then sentenced without a probation hearing.[46]

Due process requires that a defendant in a probation revocation proceeding be afforded the opportunity to justify his continued probation at a preliminary and final hearing.

> At the preliminary hearing, a probationer or parolee is entitled to notice of the alleged violations of probation or parole, an opportunity to appear and to present evidence in his own behalf, a conditional right to confront adverse witnesses, an independent decisionmaker, and a written report of the hearing. [*Morrissey* ], 408 U.S., at 487, 92 S.Ct., at 2603.  The final hearing is a less summary one because the decision under consideration is the ultimate decision to revoke rather than a mere determination of probable cause, but the 'minimum requirements of due process' include very similar elements:
> "(a) written notice of the claimed violations of (probation or) parole; (b) disclosure to the (probationer or) parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial

---

[46] Petition, Docket No. 1 at 7.

officers or lawyears [*sic*]; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking (probation or) parole."[47]

Where appropriate, conventional substitutes for live testimony, including affidavits, depositions, and documentary evidence, may be used in parole revocation hearings. The Supreme Court also recognized some flexibility must be given.[46]

The record in this case shows that on February 18 and 19, 2009, the San Joaquin County Superior Court held a formal hearing on the probation violation and on Harris's motion to suppress under California Penal Code § 1538.5.[47] At the conclusion of that hearing with respect to the probation violation, the trial court stated:

> THE COURT: They are separate. One says you failed to obey all laws; we have already heard that concurrent with the preliminary hearing and you were found to have violated probation as a result of that. Other one, probation is saying you failed to follow the direction because you didn't report. Violation of probation has not been heard yet. That's still pending.[48]

The San Joaquin County Superior Court did defer entry of judgment on the probation violation until such time as the hearing on Harris's motion to withdraw his earlier guilty plea was heard. At the June 18, 2009, hearing the following colloquy occurred:

> [HARRIS]: So I was under the impression that the VOP would trail the outcome of the present case.
> THE COURT: Violation of probation, I heard the evidence at the preliminary hearing. I delayed ruling because your attorney wanted a motion to withdraw the plea. The Court is denying the motion to withdraw the plea, and at this time was prepared to rule on the violation of probation.

---

[47] *Gagnon v. Scarpelli*, 411 U.S. 778, 786 (1973) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972)).

[46] *Id.* at 782 n.5.

[47] Lodged Doc. No. 10, Transcript, February 18, 2009; Transcript, February 19, 2009.

[48] Lodged Doc. No. 10, Transcript, February 19, 2009, at 109.

> And I find the fact that you did violate probation because you failed to obey all laws.
>> Good luck Mr. Harris.  Thank you.
>> Your other matter's dismissed.  It's dismissed.  Thank you.[49]

Although there is no indication in the record that a hearing was held on the failure to report the charge, Harris was given an extensive hearing spanning two consecutive days on the charge that he had violated the condition of his probation not to break the law.  Because he suffered no prejudice from the failure to hold a hearing on the second charge, Harris is not entitled to relief under his third ground.

## V.  CONCLUSION AND ORDER

Harris is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.[50]  Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.[51]

The Clerk of the Court is to enter judgment accordingly.

Dated: June 29, 2012.

　　　　　　　　　　　　　　　　　　　 /s/ James K. Singleton, Jr.　　　　　　
　　　　　　　　　　　　　　　　　　　JAMES K. SINGLETON, JR.
　　　　　　　　　　　　　　　　　　　United States District Judge

---

[49] Lodged Doc. No. 10, Transcript, June 18, 2009, at 120.

[50] 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003))).

[51] *See* Fed. R. App. P. 22(b); Ninth Circuit R. 22-1.